UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DIANNE VEILLON | * | CIVIL ACTION NO. 2:16 -CV-01037 |
| v. | * | JUDGE WALTER |
| U.S. COMMISSIONER,<br>SOCIAL SECURITY<br>ADMINISTRATION | *<br>*<br>* | MAGISTRATE JUDGE KAY |

****************************************************************

## MEMORANDUM RULING

Before the court is an appeal of the Social Security Administration's denial of the Dianne Veillon's application for disability insurance benefits (Rec. Doc. 1) filed by Ms. Veillon. Both Ms. Veillon and the Social Security Administration (SSA) have submitted briefs in support of their positions (Rec. Docs. 11, 14, 17). For the following reasons, the administrative decision of the SSA will be **AFFIRMED.**

## FACTS & PROCEDURAL HISTORY

In 2010, Ms. Veillon was fired from her job as a dietary aide at Byrd Hospital when her depression interfered with her ability to do her job and get along with others. *See, e.g.,* Application, (Rec. Doc. 8, p. 178); Dr. Adams's Psychological Evaluation, (Rec. Doc. 8, p. 378).[1] Ms. Veillon subsequently sought treatment for depression, anxiety disorder, and bipolar disorder. Between 2010 and 2013, she was hospitalized several times as a high suicide risk. (Rec. Doc. 8, p. 378).

In 2013, she filed an application with the SSA for disability insurance benefits. In her application, she claimed to suffer from depression, anxiety disorder, bipolar disorder, borderline

---

[1] For the first time during the hearing, Ms. Veillon claimed she was fired because the hospital discovered that she could not read or write. (Rec. Doc. 8, p. 26). This is contradicted by her previous explanations.

1

intellectual functioning (BIF), and mild mental retardation (MMR). She claimed that these impairments caused her to lose her job and prevented her from being able to work.

Her application was denied initially on May 14, 2014, based on her work history, medical history, her consultative expert's (Dr. Adams) opinion, and the SSA's consultative expert's (Dr. Kahler) opinion. (Rec. Doc. 8, pp. 50-63). Based on his review of Ms. Veillon's medical records, his meeting with Ms. Veillon, and a Wechsler Adult Intelligence Scale (WAIS) assessment, Dr. Adams concluded that Ms. Veillon suffered from depression, anxiety disorder, bipolar disorder, BIF, and MMR. (Rec. Doc. 8, pp. 377-81). Dr. Adams also concluded that Ms. Veillon would not be able to withstand a 40-hour work week unless her symptoms lessened. (Rec. Doc. 8, pp. 377-81). The SSA's consultative expert, Dr. Kahler, based his opinion on Ms. Veillon's medical records, including Dr. Adams's opinion, and he concluded that Ms. Veillon suffered from depression, general anxiety disorder, and bipolar disorder. After reviewing Ms. Veillon's WAIS assessment, Dr. Kahler did not conclude that Ms. Veillon had medically determinable impairments of BIF or MMR because Ms. Veillon's actual functioning contradicted the results. (Rec. Doc. 8, pp. 56-58). The initial denial agreed with Dr. Kahler that Ms. Veillon could "perform simple jobs without complex instructions, and ones that do not involve working closely with others." (Rec. Doc. 8, p. 63).

After the initial denial, Ms. Veillon requested a hearing, which was held before an administrative law judge (ALJ) on December 12, 2014, in Alexandria Louisiana. The petitioner, Ms. Veillon; a medical expert, Dr. Stigall; and a vocational expert, Mr. Rue, testified at the hearing. Based on the hearing testimony and the evidence in the record, which included the opinions of Dr. Adams and Dr. Kahler, the ALJ denied the application. The ALJ found that Ms. Veillon's medically determinable impairments included depression, anxiety disorder, and bipolar

2

disorder, but that they did not include BIF or MMR. This aligned with the conclusions of Dr. Stigall and Dr. Kahler. She discredited Dr. Adams's conclusion that Ms. Veillon suffered from BIF or MMR and that Ms. Veillon could not withstand a 40-hour work week because Ms. Veillon graduated from high school, attended culinary school, worked for several years, handled her own finances, maintained most aspects of her personal care, interacted with family members, drove a car, and attended church. (Rec. Doc. 8, pp. 75-77). The ALJ also gave little weight to Dr. Adams's WAIS assessment determination because it was "based largely upon the claimant's subjective reports of daily activities," and Ms. Veillon had a history of exaggerating symptoms. (Rec. Doc. 8, pp. 76-77).

Based on Ms. Veillon's medically determinable impairments, the ALJ found that she was limited to "unskilled, simple, routine, and repetitive jobs without quotas; occasional changes to the work setting; occasional work-related decisionmaking; no interaction with the public or coworkers; and occasional interaction with supervisors." (Rec. Doc. 8, p. 73). The vocational expert determined that based on Ms. Veillon's age, work history, education, and the above functional limitations, that Ms. Veillon could find a job as a kitchen helper, cook helper, or dining room attendant. (Rec. Doc. 8, pp. 44-48). Based on the vocational expert's testimony, the ALJ found that Ms. Veillon was not disabled because she was able to work in these three jobs. (Rec. Doc. 8, p. 79).

Ms. Veillon requested that the SSA Appeals Council review the ALJ's decision, and on May 10, 2016, the Appeals Council denied the request. (Rec. Doc. 8, pp. 5-7). She then filed this civil action, appealing the SSA's denial of her disability application. Ms. Veillon appeals the decision on two main grounds: (1) the ALJ did not consider all impairments when determining

3

Ms. Veillon's functional capacity, and (2) the ALJ did not include all relevant limitations in her hypothetical questions to the vocational expert.

## LAW & ANALYSIS

### I. STANDARD OF REVIEW

This court's "review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's. Conflicts of evidence are for the Commissioner, not the courts, to resolve. If the Commissioner's fact findings are supported by substantial evidence, they are conclusive.

*Id.* (internal quotations and citations omitted).

### II. BURDEN OF PROOF

The claimant has the burden of proving that she suffers from a disability that qualifies her for benefits. *Id.* Such a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate a disability claim, the ALJ conducts a five-step sequential analysis, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing

>   past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520).

As a threshold inquiry, to be determined disabled, the claimant has the burden of establishing that she is not currently working (step one) and that she is severely impaired (step two). If the claimant fails to establish steps one or two, the ALJ would find the claimant ineligible for disability benefits. If the claimant establishes steps one and two, to be eligible for disability benefits, the claimant must also establish either that her impairment is listed in the Code of Federal Regulations as a *per se* disability (step three) or that her impairment prevents her from returning to her old job (step four). If the claimant establishes step three, the ALJ's inquiry ceases, and the claimant is eligible for disability benefits. If the claimant cannot establish step three but establishes step four, the burden shifts to the Commissioner to demonstrate that the claimant's impairment does not prevent her from doing other work (step five), and the claimant has an opportunity to rebut the Commissioner. If the claimant can still do other work despite her impairment, the claimant is ineligible for disability benefits.

To determine the plaintiff's ability to return to her old job (step four) or work in any other job (step five), the ALJ assesses the claimant's residual functional capacity (RFC). *Perez*, 415 F.3d at 461. "[The] residual functional capacity is the most [the claimant] can still do despite [her] limitations. [The ALJ] assess[es the] residual functional capacity based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ considers all medical and nonmedical evidence that relates to all impairments suffered by the claimant, including non-severe impairments. 20 C.F.R. § 404.1545.

Here, Ms. Veillon's application was denied at step five of the process. The ALJ determined that her limitations prevented her from returning to her previous work, but the

5

limitations did not prevent her from finding other work. Ms. Veillon argues that this determination was incorrect because the ALJ did not properly determine her RFC and did not ask the vocational expert hypothetical questions that accounted for her true RFC.

### III. **RESIDUAL FUNCTIONAL CAPACITY**

Ms. Veillon argues that the ALJ erred in determining her RFC because the ALJ (1) did not take into account her mental abilities; (2) did not take into account a consultative expert's determination that she could not withstand a 40-hour work week; (3) did not credit an expert's conclusion that Ms. Veillon seemed sincere; and (4) did not credit an expert's opinion that Ms. Veillon might be disabled based on her RFC.

#### A. Cognitive Functioning

First, the petitioner argues that the ALJ did not give proper weight to "objective testing [that] demonstrate[d] that Ms. Veillon has significant deficits in cognitive functioning." (Rec. Doc. 11, p. 4). Ms. Veillon argues that based on the WAIS test results and Dr. Adams's opinion, the ALJ should have concluded that Veillon had the severe impairments of BIF or MMR, or if her impairments did not reach that level of severity, the ALJ should have applied the test results as a non-severe impairment when determining the RFC. When determining the RFC, the ALJ must include all severe and non-severe medically determinable impairments. *See* 20 C.F.R. § 404.1545(a)(2). To be medically determinable the "impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.* at § 404.1508. The ALJ is not required to find that the claimant has a recognizable impairment based on the claimant's subjective complaints, when those complaints do not have objective supporting evidence. *Id.* Furthermore, "[t]he ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record." *See Caro v. Colvin*, No. EP-14-CV-212-MAT, 2017 WL 635497, at *2 (W.D. Tex. Feb. 14, 2017) (citing

*Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)). When reviewing the ALJ's determination about whether an impairment is medically determinable, this court may not reweigh the evidence. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (citing *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985)). Rather, if the ALJ's determination is supported by substantial evidence, the court must uphold it. *Id.* at 173 (citing 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).

Here, the ALJ considered Dr. Adams's conclusions about potential BIF and MMR limitations, and she considered the WAIS assessment results. However, the ALJ found that the doctor's conclusions and the assessment results were based on Ms. Veillon's "subjective reports of daily activities." (Rec. Doc. 8, p. 77). These subjective reports of her symptoms were contradicted by objective evidence of her actual functioning and were further undermined by a history of Ms. Veillon exaggerating her symptoms. (Rec. Doc. 8, pp. 76-77). Ms. Veillon argues that the evidence relied on by the ALJ, such as her high school graduation and work history does not rule out the possibility that she suffers from BIF or MMR. However, this argument improperly asks the court to reweigh the evidence. *See Martinez*, 64 F.3d at 174 (citing *Cook*, 750 F.2d at 392).

The ALJ relied on Ms. Veillon's present functioning in her personal life, the opinions of two other consultative experts, Ms. Veillon's attendance of culinary school, and her credibility in addition to her past work experience and graduation from high school. These factors taken as a whole contradicted the WAIS assessment and Dr. Adams's opinion. Accordingly, the ALJ's determination that Ms. Veillon did not have the medically determinable impairments of BIF or MMR was supported by substantial evidence, and the ALJ was not required to include such impairments or symptoms of the impairments in her RFC determination. *See Caro*, 2017 WL

635497, at *2 (citing *Morris*, 864 F.2d at 336); 20 C.F.R. § 404.1508. The ALJ did not commit error by excluding mental ability limitations in her RFC determination.

### B. Ability to Withstand a 40-Hour Work Week

Second, Ms. Veillon argues that the ALJ should have given more weight to Dr. Adams's assessment that she could not withstand a 40-hour work week unless her symptoms lessened. "With nontreating physicians' opinions, an ALJ is free to incorporate only those limitations that [s]he finds 'consistent with the weight of the evidence as a whole.'" *Andrews v. Astrue*, 917 F. Supp. 2d 624, 642 (N.D. Tex. 2013) (quoting *Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008)). When evaluating the ALJ's decision to discredit an expert's opinion, the court cannot reweigh the evidence and must affirm the decision if it is supported by substantial evidence. *See Martinez*, 64 F.3d at 174 (citing *Cook*, 750 F.2d at 392).

The ALJ did not give great weight to the opinion of consultative expert, Dr. Adams opinion that Ms. Veillon could not work a 40-hour week. The ALJ found that Ms. Veillon's symptoms improved with treatment. (Rec. Doc. 8, p. 75). She also accounted for limitations that could interrupt Ms. Veillon's ability to work. The ALJ stated:

> Based on the claimant's generally intact thought and her having no signs of significant thought or cognitive deficits, but also considering the claimant's impaired concentration, the undersigned finds that she was limited to unskilled, simple, routine, and repetitive jobs. Furthermore, because of the claimant's anxiety and reports of panic attacks and difficulty handling stress, the undersigned finds that she was limited to work requiring no quotas, occasional changes to the work setting, and occasional work-related decisionmaking. Finally, because of the claimant's impaired mood and affect, as well as her reports of irritability and difficulty getting along with others, the undersigned find that the claimant was limited to no interaction with the public or coworkers and only occasional interaction with supervisors.

(Rec. Doc. 8, p. 75). The ALJ considered Dr. Adams's opinion, and she fully explained that based on the greater-weight of the evidence that Ms. Veillon could withstand a 40-hour work

8

week with certain limitations. Because Dr. Adams was a nontreating expert, "the ALJ was free to incorporate only those limitations that he [she found] 'consistent with the weight of the evidence as a whole.'" *Andrews*, 917 F. Supp. 2d at 642 (quoting *Hernandez*, 278 F. App'x at 338). The ALJ's conclusion that Ms. Veillon could withstand a 40-hour work week with certain limitations was supported by substantial evidence and cannot be re-determined by the court.

### C. The Petitioner's Credibility

Third, Ms. Veillon argues that the ALJ did not properly address a consultative expert's opinion that Ms. Veillon's statements were credible, when the ALJ determined that some of Ms. Veillon's statements were exaggerated. Again, the petitioner's argument asks the court to and re-determine the weight and credibility of evidence, which the court may not do. Here, the ALJ supported her conclusion that Ms. Veillon was exaggerating symptoms based on the petitioner's level of functioning and the opinion of a consultative expert. The ALJ also found that some of Ms. Veillon's symptoms were legitimate and included appropriate limitations in her RFC to account for those symptoms. Because the ALJ's conclusion is supported by substantial evidence, the court must uphold it.

### D. Dr. Stigall's Statements Regarding the Petitioner's RFC

Fourth, Ms. Veillon argues that the ALJ did not give proper weight to Dr. Stigall's statement during the hearing that Ms. Veillon could be considered disabled under an RFC assessment.[2] However, "the ALJ has the sole responsibility for determining the claimant's

---

[2] During his hearing testimony, Dr Stigall stated, "[Ms. Veillon] might however be considered disabled on the basis of an RFC assessment,...and I think that would be appropriate in this case." (Rec. Doc. 8, p. 39).

Dr. Stigall and the ALJ also had the following exchange:

> [Dr. Stigall: S]he still might meet a listing, or a finding of disability, and the inability to work based on an RFC assessment.
> [ALJ:] Yes, sir. You're -- when you say RFC, sir, you're meaning a physical?
> [Dr. Stigall:] A residual functional capacity --

9

disability status." *Greenspan*, 38 F.3d at 237 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)). The ALJ considered whether Ms. Veillon was disabled based on her RFC status and found that she was not disabled because Ms. Veillon was able to work with limitations that accounted for her medically determinable impairments. (Rec. Doc. 8, pp. 78-79). The ALJ was not obligated to give great weight to a psychologist consultative expert's opinion of whether Ms. Veillon could perform a job that existed in significant numbers in the national economy. The ALJ's determination of Ms. Veillon's RFC and limitations based on her medically determinable impairments were based on substantial evidence, and the court cannot reweigh the evidence to give Dr. Stigall's statements more importance.

## IV.  HYPOTHETICAL QUESTIONS TO THE VOCATIONAL EXPERT

Finally, the plaintiff argues that the ALJ erred by not including mental limitations in the hypothetical question she asked the vocational expert. "An ALJ's hypothetical is 'defective unless[:] (1) it incorporates reasonably all disabilities of the claimant recognized by the ALJ, and (2) the claimant or [her] representative is afforded the opportunity to correct deficiencies in the hypothetical.'" *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (citing *Bellow v. Chater*, 66 F.3d 323 (5th Cir. 1995) (unpublished)). As previously discussed, the ALJ found that the alleged mental limitations were not medically determinable impairments, and therefore, the mental limitations did not need to be included in the hypothetical. During the hearing the ALJ asked the vocational expert, whether a person with the same age, education, and work experience of Ms. Veillon would be able to find a job that had no exertional limitations, had occasional changes to the work setting; had occasional work related decisionmaking; had no contact with

---

        [ALJ:] Yes.
        [Dr. Stigall:] -- assessment.
(Rec. Doc. 8, p. 41).

10

the public and coworkers; had only occasional contact with supervisors; was unskilled, simple, routine, and repetitive; and had no quotas. (Rec. Doc. 8, pp. 43-47). This hypothetical accounted for all the impairment that were identified by the ALJ. (Rec. Doc. 8, pp. 68-79). The hypothetical question was not defective and is not grounds for reversing the SSA's decision.

## **CONCLUSION**

Because, as explained above, the Social Security Administration based its decision on substantial evidence and correct law, the administrative decision will be **AFFIRMED**.

Shreveport, Louisiana, this 12 day of April, 2017.

*[signature]*

UNITED STATES DISTRICT JUDGE